UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

CECIL MELVIN MARSHALL,

　　　　　　　　　　Defendant.

16 Cr. 702 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This order resolves a counseled motion by defendant Cecil Melvin Marshall for a reduction of sentence, pursuant to Section 404 of the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(B). For the reasons that follow, the Court denies the motion.

I.　Background

**A. Marshall's Prosecution, Sentence, and Supervised Release Violations**

In July 2009, Marshall pled guilty in the Western District of Virginia to distributing 50 grams or more of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1). Dkt. 2 at 1. He was sentenced to a mandatory minimum term of 120 months' imprisonment to be followed by a five-year term of supervised release. *Id.* at 2. Marshall's prison term was subsequently reduced twice. Dkt. 18 at 1. It was first reduced by 12 months, pursuant to Federal Rule of Criminal Procedure 35(b), relating to a defendant's post-sentence cooperation with law enforcement. *Id.* On January 13, 2016, it was reduced to time served, under Amendment 782 to the Sentencing Guidelines, which reduced the offense level for most narcotics offenses by two levels, and applied retroactively. *Id.* Marshall, who had served a little over seven years in prison, commenced his term of supervised release that day.

On October 21, 2016, this Court accepted transfer of jurisdiction over this matter. Dkt. 2.

On June 21, 2017, Marshall pled guilty to violating the terms of his supervised release by using marijuana on several dates in early and mid-2016, failing to report to the Probation Department for drug testing on several dates, and leaving the District without permission. Dkt. 18 at 1. On August 23, 2017, Marshall pled guilty to additionally violating his conditions of supervised release by committing the state crime of assault in the third degree, in connection with an act of domestic violence in which Marshall hit his then-girlfriend (the "victim") in the head with a frying pan. Dkt. 79 at 2. On September 12, 2017, the Court revoked the existing term of supervised release and sentenced Marshall to a within-Guidelines term of imprisonment of one year and one day, to be followed by a new term of five years' supervised release. Dkt. 30 at 2. On or about July 13, 2018, Marshall commenced the new term of supervised release. Dkt. 79 at 2.

On October 4, 2022, after an evidentiary hearing, the Court found that Marshall had violated his supervised terms as alleged in each of six specifications. *Id.* The three most serious violations arose from another act of domestic violence. Specifically, on January 27, 2019, as the Court chronicled in a detailed bench ruling, Marshall had smashed a bottle of Hennessey liquor against the head of the same victim as earlier, while the two were in the back seat of an Uber, causing a deep laceration in her forehead that required hospitalization and stitches. *See generally* Dkt. 57 at 2–23. Based on these violations, the Court found that Marshall had committed the crimes of assault in the second degree, fourth degree criminal possession of a weapon, and assault in the third degree. Dkt. 79 at 2. In addition, the Court found, Marshall had violated his supervised release terms by failing to report as directed to the Probation Officer, failing to notify the Probation Department of a change in residence, and failing to participate in outpatient treatment sessions. *Id.* These violations stemmed from Marshall's having fled and gone into

2

hiding after committing the January 27, 2019 attack, for which he was apprehended in May 2022.

On October 26, 2022, the Court again revoked Marshall's supervised release term, and imposed a sentence of 48 months' imprisonment, to be followed by a new two-year supervised release term. *See generally* Dkt. 65 ("10/26/22 Tr."). That sentence was slightly above the applicable Guidelines range of 37 to 46 months' imprisonment. *Id.* at 5, 17. The Court's extended analysis at the sentencing proceeding, which the Court reviews in further detail below, explained why the 18 U.S.C. § 3553(a) factors germane to violations of supervised release required a sentence of that length. The Court particularly emphasized the gravity of Marshall's breach of the Court's trust in allowing him to be on release, and the related interests in specific deterrence and public protection. *See id.* at 40–44.

Marshall appealed his sentence. On January 31, 2024, in a summary order, the Second Circuit affirmed Marshall's sentence. *United States v. Marshall*, No. 22-2837-CR, 2024 WL 358133 (2d Cir. Jan. 31, 2024).

### B. Marshall's Motion for a Reduction of Sentence

On September 20, 2024, Marshall filed the instant motion for a reduction of sentence pursuant to Section 404 of the First Step Act and 18 U.S.C. § 3582(c)(1)(B). Dkt. 77 ("D. Mem."). Marshall principally argues that a reduction would enable him to benefit from the First Step Act of 2018, which authorized retroactive sentence modifications for defendants sentenced before August 2010 to mandatory minimum sentences for crack cocaine offenses. *Id.* at 4–5. Marshall also notes his clean disciplinary record; pledges to make a positive contribution to the community after his release; and notes that, during his incarceration, prisons "throughout the

country have been short-staffed and programming and institutional safety have suffered." *Id.* at 7.

On October 4, 2024, the Government filed an opposition to Marshall's motion. Dkt. 79 ("G. Mem.")

As of today, Marshall has served approximately 28 months of his 48-month sentence. *Id.*

## II. Discussion

It is undisputed that the Court has the authority under Section 404 of the First Step Act of 2018 to reduce Marshall's 48-month sentence for his most recent supervised release violations. See D. Mem. at 4–5; G. Mem. at 3–4.

The First Step Act enables defendants who previously had been unable to obtain retroactive relief from a mandatory minimum sentence under the Fair Sentencing Act of 2010 to pursue such relief. Pub. L. No. 115-391, 132 Stat. 5194 (2018). Congress had enacted the Fair Sentencing Act in August 2010 to close the gap that had existed in the sentencing regimes governing crack and powder cocaine offenses, *Concepcion v. United States*, 597 U.S. 481, 488 (2022), which in turn had generated racial disparities in sentencing, *see Terry v. United States*, 593 U.S. 486, 490–91 (2021); *cf. id.* at 495–96 n.1 (Sotomayor, J., concurring). The Fair Sentencing Act did so, *inter alia*, by increasing the quantity of crack cocaine necessary to trigger a 10-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) from 50 grams to 280 grams. *Marshall*, 2024 WL 358133, at *2. The Fair Sentencing Act also reduced the maximum sentence available for supervised release violations arising from such offenses from five years (60 months) to three years (36 months).[1] Because the Fair Sentencing Act was not retroactive,

---

[1] In challenging on appeal the 48-month sentence the Court imposed for his supervised release violations, Marshall argued that the First Step Act limited the sentence available to 36 months. The Second Circuit rejected that argument, finding that the length of the revocation sentence was

4

however, relief under it was unavailable for Marshall, whose offenses and sentencing predated the Act. *Id.* Section 404 of the 2018 First Step Act made the provisions of the Fair Sentencing Act retroactive, permitting incarcerated offenders to petition for a reduction of their sentences.

Salient here, the relief available under Section 404 extends to defendants, like Marshall, who are serving a post-revocation sentence for a violation of supervised release, provided that their underlying offense is a "covered" one, that is, one covered by the Fair Sentencing Act and committed before August 3, 2010. § 404(a), 132 Stat. 5222; *see Terry*, 593 U.S. at 492; *see also, e.g., United States v. Gonzalez*, 71 F.4th 881, 884 (11th Cir. 2023) ("[A] sentence imposed upon revocation of supervised release is eligible for a sentence reduction under § 404(b) of the First Step Act when the underlying crime is a covered offense within the meaning of the Act."), *cert. denied*, 144 S. Ct. 552 (2024); *United States v. Woods*, 949 F.3d 934, 937 (6th Cir. 2020) (same); *United States v. Venable*, 943 F.3d 187, 193–94 (4th Cir. 2019) (same).

A court, however, is not required to grant a motion for sentence reduction even if it finds a defendant eligible for relief under the First Step Act. Section 404(c) of that Act provides that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." § 404(c), 132 Stat. 5222. And, as the Supreme Court has noted, a district court need not accept a movant's arguments that changes in law, or rehabilitative steps by the offender, merit a reduction of sentence. *See Conception*, 597 U.S at 500–02. The Court is instead required to consider the arguments before it, and may exercise its discretion with an eye to whether the interests reflected in the 18 U.S.C. § 3553(a) factors support a reduction in the sentence imposed. *See id.*; *United States v. Lee*, 841 F. App'x. 285, 288 (2d Cir. 2021)

---

governed by the law prevailing at the time of the defendant's original sentence. *See Marshall*, 2024 WL 358133, at *2–3.

5

(summary order) ("A sentence reduction under the [First Step] Act rests within the discretion of the district court."); *see also Gonzalez*, 71 F.4th at 885 (same); *Venable*, 943 F.3d at 194 n.11 (similar); *United States v. Stewart*, No. 2 Cr. 1435, 2021 WL 2635818, at *3–4 (S.D.N.Y. June 25, 2021) (denying sentence reduction based on assessment of § 3553(a) factors where defendant was eligible for relief under Section 404(a)); *United States v. Morrison*, No. 7 Cr. 3, 2019 WL 6732877, at *2 (S.D.N.Y. Dec. 11, 2019) (same), *aff'd sub nom. Lee*, 841 F. App'x 285; *United States v. Grullon*, No. 99 Cr. 1142-8, 2020 WL 2793054, at *3 (S.D.N.Y. May 29, 2020) (considering § 3553(a) factors after finding defendant eligible for relief under Section 404(a)); *United States v. Henderson*, No. 4 Cr. 20, 2020 WL 6784351, at *9 (E.D. Va. Nov. 18, 2020) (same).

The Court emphatically rejects Marshall's bid for a reduction of the 48-month sentence imposed here. As the transcript of the sentencing proceeding reflects, the Court, before imposing that sentence, carefully considered the relevant factors. Central to its decision was the gravity of Marshall's supervised release violations, which the Court termed "among the most gravely serious" that it had seen in more than 11 years on the bench. *See* 10/26/22 Tr. at 43. The Court explained:

> You had previously committed domestic violence against this very victim . . . . You did so by smashing her in the head with a frying pan. I sentenced you to a year and a day in prison, followed by a term of supervised release. That the sentence was not any longer . . . reflected a degree of trust in you. You had, after all, admitted to the violation, you said you were ashamed of it, and I put a degree of trust in you not to do that again.
>
> You violated the trust that [the Court] put in you, and you did so flagrantly. A little more than six months after commencing your new supervised release term, you smashed [the victim] again in the head, this time with a bottle of Hennessy, opening up a gaping bleeding wound in her forehead that left blood all over the Uber car and all over [the victim] and her clothing. Except in the details, you essentially did exactly what you had done before, and then you ran away. You left

6

> her there, bleeding and stunned in the middle of the New York night, and at the mercy of the kindness of an Uber driver to get her help.
>
> By the way, your running away itself is evidence of your having attacked her. Had it been someone or something else that gave [the victim] that head wound, I expect you would have stayed around. Instead, in what I regard as an act of abject and complete cowardice, you ran away from your partner and the mother of your child . . . .
>
> And you didn't just run away that night. You hid for more than two years, until, no thanks to you, you were finally found in hiding and brought to justice. You ignored . . . all your obligations of supervised release during that period. You also necessarily ignored the child you have with [the victim], whom you claim to care about, but apparently not when your self interest was at stake.
>
> In these circumstances, the breach of the Court's trust is extraordinary. I note that the details of your breach of trust—including the repetitive quality of the violation here, the fact of your absconding afterwards, and the sheer violence and cowardice of your conduct—are not taken into account by the Guidelines here. . . . [S]o . . . while I do not put much weight in the Guidelines' recommendation here, that does not at all mean that the Guidelines overstate your culpability.

*Id.* at 43–44.

The interests of specific deterrence and public protection also weighed heavily in favor of the sentence imposed, the Court found:

> Given your conduct, I cannot have any confidence that, if you were at liberty, you would not hurt someone again.
>
> It could be [the victim], whom you have battered twice, whom you have repeatedly tried to deter from reporting your violence to the authorities, and with whom the fact of a shared child will force you to have some continuing contact. It could be another person, perhaps another woman. The point is that your repeated domestic violence has shown you to have an inability to restrain yourself. To put it a little differently, one act of domestic violence may be an aberration. The second time, particularly when directed at the same victim, suggests a pattern. It suggests a real risk of recurrence.
>
> It follows that, if it was at all possible for you be specifically deterred, a sentence for this violation much longer than the one you previously served is in order. More realistically, it follows that a long sentence is needed to protect the free public. For as long as you are in prison, by definition, you cannot hurt the free public, including women in your life.

7

> A substantial sentence is also consistent with the interest in deterring other people on supervised release from committing serious violations of the Court's trust, including by means of domestic violence. The message to you and others from this sentencing needs to be this: This Court will not tolerate brutal acts of domestic violence by persons under its supervision. Domestic violence of such a nature will be met with long prison terms.

*Id.* at 45–46.

The Court also considered potential mitigating factors, but did not find many. *Id.* at 46. Marshall had not accepted responsibility; his claim to have "lost contact" with the Probation Department after January 2019 was untrue, as Marshall had cut off contact with the Department and "ran away to another state"; Marshall's claim to have "set [his] life on track" since his apprehension for the instant violations was commendable but subject to the "very obvious caveat" that the Court could not "have great confidence that these changes are durable, as opposed to for show"; and Marshall's claim to be devoted to his four-year-old son was undercut by his conduct:

> I do not doubt that you have emotions in that direction. But actions speak louder than words. You have now twice battered his mother in the head with a heavy object. First, a frying pan and next, a Hennessy bottle, and the second time you ran away. You could have killed your son's mother. You could have fractured her skull. You could have blinded her. In various ways you could have permanently injured her. A man who claims to be a devoted father does not run away when the mother of his child is battered and bleeding in the dead of the New York night.
>
> In light of your conduct, whatever your inner emotions are about your son, I cannot conclude that he is better off with you at liberty. While you are in prison, his mother, his primary caregiver, is safe from you.

*Id.* at 46–47. The Court did, however, recognize that the prison conditions in which Marshall had been held at the Metropolitan Detention Center in the five months since his apprehension had been grueling and unacceptable, and therefore, in calculating the just sentence, treated that as "equating to somewhat more than that amount of time, if spent under normal conditions of custody." *See id.* at 47–48. The Court nevertheless found an above-Guidelines sentence of 48

8

months in custody to be the lowest compatible with the weighty interests reflected in the § 3553(a) factors. *Id.* at 48.

Marshall's bid for a reduction of sentence is largely based on Congress's adjustment in the Fair Sentencing Act of the quantity of crack cocaine required to mandate a 10-year minimum sentence and the First Step Act provision authorizing defendants retroactively to seek relief from such sentences. *See* D. Mem. at 5–7. Defense counsel, however, made that very argument at Marshall's sentencing for his supervised release violations. Counsel noted that Marshall's mandatory-minimum 120-month sentence in 2009 had resulted from a seemingly unjustified disparity between the crack and powder cocaine sentencing regimes. *See* 10/26/22 Tr. at 19–20. And Marshall himself, in addressing the Court, made the same point, terming the law under which he had been sentenced in 2009 a "nonviolent racist law" and noting that an offense involving 52 grams of crack cocaine today would not mandate a 10-year sentence, *id.* at 34–35, but instead a five-year sentence. The Court was privy to and considered that argument at sentencing, but did not find it to counsel a sentence below 48 months' imprisonment for Marshall's gravely serious, violent supervised release violations. The recapitulation of that argument in longer form in support of a reduction of sentence does not make it more persuasive. Marshall's bid to invoke the flaws in the federal sentencing regime as of his original sentencing to enable his early release from the sentence thoughtfully imposed for his domestic violence and related supervised release violations is particularly unpersuasive given the Court's finding that a sentence of the length imposed was necessary to protect the public—in particular, the victim whom Marshall has twice smashed in the head, first with a frying pan and later with a liquor bottle.

The Court has considered Marshall's separate arguments for a reduced sentence, based upon post-sentencing circumstances. These include his having taken vocational classes, his participation in drug treatment, his lack of a disciplinary record since October 2022, and the general rigors of federal custody during the period. *See* D. Mem. at 7. These factors, considered separately and together, do not disturb the Court's bottom-line assessment. For avoidance of doubt, the Court continues to find the sentence imposed just, reasonable, and necessary.

## CONCLUSION

For the reasons stated, the Court denies Marshall's motion for a reduction of sentence. The Clerk of Court is respectfully directed to terminate the motion pending at Docket 77.

SO ORDERED.

_Paul A. Engelmayer_
PAUL A. ENGELMAYER
United States District Judge

Dated: November 13, 2024
       New York, New York

10